## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH F. DRAKE, | : | Civil No. 1:20-CV-0972 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion to dismiss for lack of jurisdiction and failure to state a claim filed by the United States of America ("Government").  (Doc. 26.) The Government argues Plaintiff Joseph Drake's Federal Tort Claims Act ("FTCA") claim against the Bureau of Prisons ("BOP") premised upon 18 U.S.C. § 4042 is barred by the discretionary function exception to the FTCA.  (Doc. 27.) Additionally, the Government argues that Plaintiff has failed to state a claim of negligent infliction of emotional distress.  (*Id.*)  The motion is fully briefed and ripe for disposition.  For the reasons that follow, the court will grant the Government's motion to dismiss Drake's FTCA claim premised upon 18 U.S.C. § 4042 as well as his state negligent infliction of emotional distress claim.  Because Defendant did not address Drake's claim that BOP officials breached their legal duty unto him as prescribed by the BOP's standard of employee conduct, this

claim will not be dismissed.  The Government will be required to file an answer to this sole remaining claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 11, 2018, Joseph Drake ("Drake" or "Plaintiff") was housed in cell 126, a double cell on the B2-unit at the Canaan United States Penitentiary ("USP Canaan"), in Waymart, Pennsylvania.[1]  At the time, the upper bunk in Cell 126 was unoccupied.  (Doc. 1, pp.4–5.)[2]  Drake states that he and inmate Fordrick Kealoha, who lived on the B1-unit, Cell 117, were compatible to cell together "because they are both (Homeboys) from the island[s] (Hawaii and Guam)."  (*Id*., p. 5.)  Drake and Kealoha were the only Pacific Islanders at USP Canaan at the time.  (*Id*., p. 11.)  Between April 11-13, 2018, both inmates told prison officials that Kealoha faced an "emergency" situation in his housing unit due to "[inmate] prison politics" that needed immediate resolution.  They told staff that Kealoha was experiencing problems on his housing unit due to the prison's practice of housing inmates of different national origins together.  In writing, Kealoha asked for "emergency assistance" in transferring to Drake's cell because he was "trying to avoid any problems" but does not wish "to further [elaborate] on the issue/subject

---

[1] Drake is presently housed at USP Terre Haute, in Terre Haute, Indiana.  *See https://www.bop. gov/inmateloc/* (search:  00886093; last visited August 22, 2021).

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

matter at hand, and hoping that you understand and [read] between the line[s]." (*Id.*, pp. 25, 27.)  Drake urged BOP officials to immediately allow Kealoha "to move in the cell with plaintiff to resolve any an[d] all [inmate] prison politics[ ] regarding cell situations" and stressed the urgency of the situation.  (*Id.*, pp. 5, 25–28.)

On April 16, 2018, during breakfast, Drake was involved in a physical altercation with several inmates "of [a] different race, over prison cell problem Plaintiff['s] Homeboy I/M (Kealoha) [wa]s having a few days back that extended to Plaintiff."  (Doc. 1, p. 6; Doc. 35, p. 7.)  Drake "was not the person [ ] or individual that was having prison cell issues with other races, it was Plaintiff's homeboy [inmate] Kealoha."  (Doc. 35, p. 3.)  He claims that, although he was an "innocent bystander" who was trying to "defuse and resolve a problem before it escalate[d] into a[n] interracial riot" between different races and gangs, he was assaulted on April 16, 2018.  (*Id.*, pp. 4–5.)  Following his assault, he was medically assessed and then placed in the institution's Special Housing Unit ("SHU").  (Doc. 1, p. 23.)  Kealoha was also assaulted after lunch later that same day.  (*Id.*, p. 6; Doc. 35, p. 7.)

Drake maintains that the BOP breached its duty to protect him and keep him safe as charged by 18 U.S.C. § 4042 and the Federal Bureau of Prison ("BOP") standards for employee conduct.  (Doc. 1.)  He faults BOP officials for failing to

act upon his and Kealoha's emergency request to remove Kealoha from his cell block and designate him as Drake's cellmate.  As a result of prison official's negligence and inattentiveness to their duty to protect him, Drake was assaulted due to the prison's policy housing inmates of different races to live together.  (*Id.*, pp. 8–9.)  He seeks $5,000,000.00 in relief for his physical pain, emotional suffering, and the negligent infliction of emotional distress.  (*Id.*, pp. 10–11.)

On August 23, 2019, the BOP denied Drake's Administrative Claim, No. TRT-NER-2019-02817 based on the BOP's failure to protect him from harm on April 16, 2018.  (*Id.*, p. 23.)  The BOP denied there was any "indication staff were aware of issues between [Drake] and the other inmates prior to [the] incident" and claimed there was "no evidence [Drake] experienced a compensable loss as a result of negligence on the party of a Bureau of Prisons employee."  (*Id.*)  Drake filed a timely FTCA complaint.  (Doc. 1.)

Government filed a motion to dismiss the complaint on December 23, 2020.  (Docs. 26, 27.)  Drake filed a timely opposition brief on March 25, 2021.  (Doc. 35.)  Defendant filed a reply brief on March 25, 2021.  (Doc. 36.)  The motion is ripe for disposition.

**JURISDICTION**

A federal prisoner has the right to bring a cause of action in district court under the FTCA for a breach of the duty prescribed by 18 U.S.C. § 4042. *United States v. Muniz*, 374 U.S. 150, 154–55 (1963); 28 U.S.C. § 1346(b)(1).

**STANDARDS OF REVIEW**

**A. Motion to Dismiss under 12(b)(1)**

When a defendant seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the court must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)). Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.) Conversely, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, [and] no

presumptive truthfulness attaches to [the] plaintiff's allegations …" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citing *Mortensen*, 549 F.2d at 891) (internal citation and quotation marks omitted).

Where, as in this case, the Government asserts that Plaintiff's claim falls within the discretionary function exception to the FTCA, the court treats the motion as a factual attack to the court's subject matter jurisdiction. *See S.R.P. ex rel Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012). As such, the court may weigh any evidence in the record to satisfy itself whether it has subject matter jurisdiction and there is no presumed presumptive truthfulness of Plaintiff's allegations. *Mortensen*, 549 F.2d at 891. Additionally, "[a]lthough a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity … the Government has the burden of proving the applicability of the discretionary function exception." *See S.R.P. ex rel. Abunabba,* 676 F.3d at 333.

**B. Motion to Dismiss under 12(b)(6)**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

A complaint filed by a self-represented plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Yet even a self–represented plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Self-represented plaintiffs are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the

plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

Drake's claim that the Government breached its duty of care to keep him safe is threefold:  (1) BOP prison officials were negligent in failing to provide for his safekeeping under 18 U.S.C. § 4042 when not heeding his emergency request to have Kealoha assigned as his cellmate; (2) prison officials violated mandatory standards of care set forth in the BOP Program Statement 3420.11, Standards of Employee Conduct based on their inattentiveness and failure to respond to the emergency situation presented by Kealoha and Drake foretelling of a conflict between inmates of different races which led to his assault; and (3) a state claim of negligent infliction of emotional distress.  *See* Doc. 1.

The Government contends that the court lacks subject matter jurisdiction over Drake's FTCA claim based on 18 U.S.C. § 4042, as the discretionary function exception to sovereign immunity applies to decisions concerning the safe housing of inmates and because Drake fails to state a claim of negligent infliction of emotional distress.  (Doc. 27.)  In his opposition brief, Drake agrees that the discretionary function exception applies to his FTCA claim concerning the BOP's failure to "relocate his homeboy to another cell upon request the (D.F.E.) shields the (U.S.) and its employees (U.S. DOJ/FBOP/USP Tucson) from liability under

8

the FTCA." (*Id.*, p. 12; *see also* pp. 11–14.)  However, Drake notes that the

discretionary function exception does not apply to his claim that prison officials

failed to follow their mandatory duty of care to protect him from harm as

established in the Department of Justice's Standards of Employee Conduct,

Program Statement 3420.11.³ (*Id.*, pp. 16–17.)  Finally, Drake counters he has

stated a valid negligent infliction of emotional distress claim as he observed a

tortious injury to a close relative, himself and "his Homeboy I/M (Kealoha)."  (*Id.*,

p. 18.)  Defendant's reply brief highlights Drake's failure to provide any legal

authority that the discretionary function exception is inapplicable to his 18 U.S.C.

§ 4042 claim or that he has properly alleged a claim of intentional infliction of

emotional distress as he admits only Kealoha was experiencing problems with

inmates of another race prior to April 16, 2018.  (Doc. 36.)

> **A.  Drake's Assault Claim Based Upon 18 U.S.C. § 4042 and Prison Official's Failure to Transfer Kealoha to Drake's Cell is Barred by the Discretionary Function Exception to the FTCA**

As a sovereign, the United States of America is immune from suit unless it

consents to be sued.  *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008).

---

³ The Government's motion to dismiss does not address Drake's FTCA claim based on the BOP standards of employee conduct.  *See* Doc. 1, ¶¶ 31–32; *see also* Doc. 27.  As such, this claim will not be addressed and will survive.

The FTCA provides a limited waiver of sovereign immunity whereby the United States government submits itself to be sued, in limited circumstances, for the negligent acts of its employees, in which private individuals under similar circumstances would be liable under state law. *See* 28 U.S.C. § 1346(b) and § 2671, *et seq.*; *see also Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) ("The FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages."). The United States' liability under the FTCA, however, is subject to several exceptions, one being the "discretionary function exception." *See* 28 U.S.C. § 2680(a). The FTCA's discretionary function exception withdraws the United States' waiver of sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The United States Supreme Court has developed a two-part test for determining whether agency conduct qualifies as a discretionary function or duty. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). First, the court must consider the nature of the employee's conduct at issue and determine whether it involves "an element of judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322 (1991) (citing *Berkovitz,* 486 U.S. at 536); *see also Merando*, 517 F.3d at

164–65.  The conduct is not discretionary if the employee's actions are "controlled by mandatory statutes or regulations."  *Gaubert*, 499 U.S. at 329 (internal citation omitted).  Where an employee "violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."  *Id*., 499 U.S. at 325.  Conversely, if a statute, regulation, or policy leaves it to the federal employee or agency to determine when and how to act, the employee or agency is not bound to act in a particular manner and the exercise of its authority is discretionary.  *Id*. 499 U.S. at 329.  If the first prong of the test is satisfied, the court must then consider "whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.'"  *Baer*, 772 F.3d at 172 (*quoting Berkovitz*, 486 U.S. at 536).  In making this determination, a court must keep in mind "the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort ... when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (internal quotation marks and citation omitted).

A "crucial" first step for the court is to "determine exactly what conduct is at issue."  *Centenaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000) (internal quotation omitted).  After the conduct is identified, the court must determine

11

whether the conduct is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

Drake claims 18 U.S.C. § 4042 requires the Government to keep him safe from

assault.  He relied upon this statute when notifying prison officials of the

emergency facing Kealoha, the immediate need to remove him from his housing

unit, and assign Kealoha – the only other Pacific Islander at the institution – as his

cellmate.  He claims prison official's negligent acts and omissions of their duties to

address their housing request caused him, an "innocent bystander," to be assaulted

when the same issues Kealoha's experienced reached him.  (Doc. 35.)

The Government alleges that any alleged improper decision or action by

BOP prison employees was a discretionary act; therefore, subject to dismissal

based on the application of the discretionary function exception to the FTCA.

(Doc. 27.)  The Government agrees that the BOP is required to provide for the

safekeeping, care, and subsistence of all federal prisoners pursuant to 18 U.S.C. §

4042, but Section 4042 does not indicate the way this duty is to be fulfilled and

BOP officials generally have broad discretion in fulfilling this statutory obligation.

*See Thrower v. United States*, 528 F. App'x 108, 111 (3d Cir. 2013).  The

Government also acknowledges the BOP's obligation to "provide suitable quarters

and provide for the safekeeping, care, and subsistence" and "provide for the

protection, instruction, and discipline" of those in its charge, including Drake.  *See*

18 U.S.C. § 4042(a)(2), (3).  Defendants correctly note that all such decisions

involve an element of discretion.  *See Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (While 18 U.S.C. § 4042(a)(2) and (3) requires BOP to protect and keep safe inmates in its care, "this statute leaves the implementation of these duties to the discretion of BOP officials"); *see also Rinaldi v. United States*, 460 F. App'x 80, 81 (3d Cir. 2012) ("[T]here is no federal statute, regulation or policy which requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates.").

In his opposition brief, Drake "respectfully agrees" to the extent his FTCA claim is premised on prison official's failure to relocate Kealoha to his cell.  He agrees "housing and cellmate assignments" are discretionary and "the kind that the [discretionary function exception] was designed to shield."  (Doc. 35, ¶¶ 30–36.) The court agrees with the position of both parties as to this claim.  While the BOP has a general duty to provide Drake with suitable housing pursuant to 18 U.S.C. § 4042(a)(2), BOP officials have discretion in how they carry out this directive.  The Third Circuit Court of Appeals has held that "housing and cellmate assignments are 'of the kind that the discretionary function exception was designed to shield.'" *Rinaldi,* 904 F.3d at 274 (*quoting Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000).  Thus, the BOP's failure to promptly assign Kealoha and Drake as cellmates was discretionary.  Accordingly, the court finds that both prongs of the

discretionary function test are satisfied, and this claim should be dismissed for lack of subject matter jurisdiction.

**B.     Drake Fails to State a Prima Facie Claim of Negligent Infliction of Emotional Distress**

Negligent infliction of emotion distress claims address "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another[.]" *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994).  To set forth a claim for negligent infliction of emotional distress in Pennsylvania, a plaintiff must also establish at least one of the following factual scenarios:

> (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp.3d 393, 409 (M.D. Pa. 2020) (citing *Doe v. Phila. Cmty. Health Alts. AIDS Task Force*, 745 A.3d 25, 27–28 (Pa. Super. 2000)); *see also Goodson v. Kardashian*, 413 F. App'x 417, 418 (3d Cir. 2011) (describing the elements of a claim for negligent infliction of emotional distress in Pennsylvania); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (citing § 46 of the Restatement (Second) of Torts "as setting

forth the minimum elements necessary to sustain such a cause of action."); *but see LaLoup v. United States*, 92 F. Supp. 3d 340, 348 (E.D. Pa. 2015) (noting that the Pennsylvania Supreme Court has not definitively recognized a negligent infliction of emotional distress claim based on a contractual or fiduciary duty).

Where a plaintiff alleges negligent infliction of emotional distress due to observing a close relative's injury due to the negligent acts of another, he must demonstrate that he was: (1) located near the accident/incident; (2) that the "shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident"; and (3) that the plaintiff and the victim are closely related. *Sinn v. Burd*, 404 A.2d 672, 684–85 (1979). To assert a zone of danger theory of liability, a plaintiff must plead a direct emotional impact based on their sensory and contemporaneous observance of defendant's negligent act on the closely related victim. *Id.,* 404 A.2d at 685–86; *Mazzagatti v. Everingham*, 516 A.2d 672, 673 (1986).

Contrary to Drake's assertions, his negligent infliction of emotional distress claim cannot be founded on either a bystander or zone of danger theory of liability due to his friend Kealoha's assault. This is primarily due Drake's failure to plead any form of qualifying close relationship with Kealoha as required by *Sinn*. At best, Drake pleads that he and Kealoha are friends or "homeboys" because of their Pacific Island origins. *See* Doc. 1, p. 69 (Drake refers to Kealoha as "a fellow

[inmate] (Islander Homeboy)").  Without questioning the strength of the bond between these men, their non-familial relationship is insufficient to demonstrate the requisite "closely related" relationship for either theory of liability.  *See Caserta v. GEICO General Ins. Co.*, 507 F. App'x 104, 107 (3d Cir. 2012) (boyfriend and girlfriend relationship insufficient to satisfy "closely related" requirement of bystander claim.); *see also Blanyar v. Pagnotti Enterprises, Inc.*, 679 A.2d 790 (1996) (recovery in emotional distress cases limited to members of injured person's "immediate family" and does not extend to minor plaintiff who witnessed drowning death of his cousin, a close friend).

Alternatively, even if Drake and Keahola were deemed to be "closely related," Drake's bystander and zone of danger theories of liability would fail because he does not allege that he was present or otherwise contemporaneously observed Kealoha being assaulted.  *See* Doc. 1, ¶ 23 ("[P]etitioner and [inmate] Kealoha [got] into physical altercation[s] --- same day different time event --- with other [inmates]".)  Drake was assaulted in the early morning of April 16, 2018.  He was then placed in the institution's SHU.  (Doc. 1, p. 23.)  Kealoha was assaulted "the same day after lunch."  (Doc. 35, p. 7.)   By his own admission, Drake was in the SHU when Kealoha was assaulted.  As such, Drake cannot base his negligent infliction of emotional distress claim on Kealoha's assault.

To state a cause of action for negligent infliction of emotional distress, a plaintiff must establish the traditional elements of a negligence claim, "i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 198 (Pa. Super. 2008). Plaintiff must also aver he suffered an immediate and substantial physical harm because of defendant's negligence. *Doe*, 745 A.2d at 28. To satisfy this requirement, it is sufficient that a plaintiff suffer from "physical manifestations of emotional suffering, i.e. depression, nightmares, stress, and anxiety." *Love v. Cramer*, 606 A.2D 1175, 1179 (Pa. Super. Ct. 1992). Finally, the plaintiff must also demonstrate that he was a "foreseeable plaintiff and that [he] suffered a physical injury as a result of defendant's negligence." *Toney*, 961 A.2d at 199 (citing *Armstrong v. Paoli Memorial Hosp.*, 633 A.2d 605, 615 (Pa. Super. 1993)).

Here, Drake's claim fails because the complaint merely recites the bare elements of a claim for negligent infliction of emotional distress following his assault by another prisoner. Drake's complaint, and its exhibits, do not demonstrate that the information both he and Kealoha provided prison officials would suggest that Drake was at risk of harm. In his opposition brief, Drake repeatedly describes himself as not being caught up in the same fray Kealoha faced on his housing unit. Drake describes his involvement in Kealoha's problem as "an

17

innocent bystander" who "was not the person/or individual that was having (prison) cell issues with other races, it was plaintiff's homeboy [inmate] (Kealoha)."  Doc. 35, pp. 3, 4, 7.  Based on Drake's own statements, as well as his admission, he has not properly plead a claim of negligent infliction of emotional distress as he fails to allege prison officials knew of a risk to his safety and ignored it.  Accordingly, the court will grant the Government's motion to dismiss this claim.

## CONCLUSION

Drake's FTCA claim that BOP officials breached their statutory duty pursuant to 18 U.S.C. § 4042 to provide him suitable housing and his safekeeping is barred by the discretionary function exception.  Accordingly, the court lacks jurisdiction over this claim.  Plaintiff's state law claim of negligent infliction of emotional distress can only be based on his personal assault claim and not inmate Kealoha who is not "closely related" to him.  Due to Drake's failure to plead any facts to suggest that prison officials should have foreseen that he too was at risk due to the problems faced by Kealoha from inmates of a different race, his state claim for negligent infliction of emotional distress will be denied.  Further, because of Drake's position that he was an "innocent bystander" and was not experiencing prison cell issues with inmates of other races, Doc. 35, pp. 3–4, 7, he will not be granted leave to amend this claim.  Drake's claim that BOP officials breached their

18

legal duty unto him as prescribed by the BOP's standard of employee conduct is the sole claim that remains.  An appropriate order will follow.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Dated:  September 30, 2021     Middle District of Pennsylvania