IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH DRAKE,** | : | **Civil No. 1:20-CV-972** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Wilson)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

We do not write upon a blank slate in this Federal Tort Claims Act (FTCA) case. Quite the contrary, the district court has already ruled in this matter, dismissing all of the inmate-plaintiff's negligence claims with one exception, a claim based upon an alleged violation of the prison's duty to protect inmates as described in Bureau of Prisons' Program Statement 3420.11. The defendant has now moved to dismiss this last remaining claim in the plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the FTCA's discretionary function exemption applies to these inmate safety concerns which call upon prison officials to exercise wide ranging direction in the performance of their duty to protect inmates from harm.

We agree, and join a rising tide of caselaw which has held that reliance upon this particular program statement to create a non-discretionary duty under the FTCA is misplaced, given the broad discretion which is inherent when addressing institutional safety considerations in a custodial setting. Therefore, upon consideration, we recommend that this motion to dismiss be granted.

## II.    Statement of Facts and of the Case

The factual background of this case was aptly summarized by the court in its opinion addressing the defendant's initial motion to dismiss, when the court explained that:

> On April 11, 2018, Joseph Drake ("Drake" or "Plaintiff") was housed in cell 126, a double cell on the B2-unit at the Canaan United States Penitentiary ("USP Canaan"), in Waymart, Pennsylvania. At the time, the upper bunk in Cell 126 was unoccupied. (Doc. 1, pp.4–5.) Drake states that he and inmate Fordrick Kealoha, who lived on the B1-unit, Cell 117, were compatible to cell together "because they are both (Homeboys) from the island[s] (Hawaii and Guam)." (Id., p. 5.) Drake and Kealoha were the only Pacific Islanders at USP Canaan at the time. (Id., p. 11.) Between April 11-13, 2018, both inmates told prison officials that Kealoha faced an "emergency" situation in his housing unit due to "[inmate] prison politics" that needed immediate resolution. They told staff that Kealoha was experiencing problems on his housing unit due to the prison's practice of housing inmates of different national origins together. In writing, Kealoha asked for "emergency assistance" in transferring to Drake's cell because he was "trying to avoid any problems" but does not wish "to further [elaborate] on the issue/subject matter at hand, and hoping that you understand and [read] between the line[s]." (Id., pp. 25, 27.) Drake urged BOP officials to immediately allow Kealoha "to move in the cell with plaintiff to resolve any an[d] all [inmate] prison politics[ ] regarding cell situations" and stressed the urgency of the situation. (Id., pp. 5, 25– 28.)

On April 16, 2018, during breakfast, Drake was involved in a physical altercation with several inmates "of [a] different race, over prison cell problem Plaintiff['s] Homeboy I/M (Kealoha) [wa]s having a few days back that extended to Plaintiff." (Doc. 1, p. 6; Doc. 35, p. 7.) Drake "was not the person [ ] or individual that was having prison cell issues with other races, it was Plaintiff's homeboy [inmate] Kealoha." (Doc. 35, p. 3.) He claims that, although he was an "innocent bystander" who was trying to "defuse and resolve a problem before it escalate[d] into a[n] interracial riot" between different races and gangs, he was assaulted on April 16, 2018. (Id., pp. 4–5.) Following his assault, he was medically assessed and then placed in the institution's Special Housing Unit ("SHU"). (Doc. 1, p. 23.) Kealoha was also assaulted after lunch later that same day. (Id., p. 6; Doc. 35, p. 7.)

Drake maintains that the BOP breached its duty to protect him and keep him safe as charged by 18 U.S.C. § 4042 and the Federal Bureau of Prison ("BOP") standards for employee conduct. (Doc. 1.) He faults BOP officials for failing to act upon his and Kealoha's emergency request to remove Kealoha from his cell block and designate him as Drake's cellmate. As a result of prison official's negligence and inattentiveness to their duty to protect him, Drake was assaulted due to the prison's policy housing inmates of different races to live together. (Id., pp. 8–9.) He seeks $5,000,000.00 in relief for his physical pain, emotional suffering, and the negligent infliction of emotional distress. (Id., pp. 10–11.)

On August 23, 2019, the BOP denied Drake's Administrative Claim, No. TRT-NER-2019-02817 based on the BOP's failure to protect him from harm on April 16, 2018. (Id., p. 23.) The BOP denied there was any "indication staff were aware of issues between [Drake] and the other inmates prior to [the] incident" and claimed there was "no evidence [Drake] experienced a compensable loss as a result of negligence on the party of a Bureau of Prisons employee." (Id.) Drake filed a timely FTCA complaint. (Doc. 1.)

Drake v. United States, No. 1:20-CV-0972, 2021 WL 4502240, at *1–2 (M.D. Pa. Sept. 30, 2021).

As the district court observed initially:

3

Drake's claim that the Government breached its duty of care to keep him safe is threefold: (1) BOP prison officials were negligent in failing to provide for his safekeeping under 18 U.S.C. § 4042 when not heeding his emergency request to have Kealoha assigned as his cellmate; (2) prison officials violated mandatory standards of care set forth in the BOP Program Statement 3420.11, Standards of Employee Conduct based on their inattentiveness and failure to respond to the emergency situation presented by Kealoha and Drake foretelling of a conflict between inmates of different races which led to his assault; and (3) a state claim of negligent infliction of emotional distress.

Id., at *3.

Having framed Drake's claims in this fashion, the district court dismissed the

plaintiff's negligent infliction of emotional distress claim and the general negligence

claimed based upon the to provide for his safekeeping under 18 U.S.C. § 4042. Id.

With respect to Drake's claims premised upon 18 U.S.C. §4042, the court noted that:

The Government agrees that the BOP is required to provide for the safekeeping, care, and subsistence of all federal prisoners pursuant to 18 U.S.C. § 4042, but Section 4042 does not indicate the way this duty is to be fulfilled and BOP officials generally have broad discretion in fulfilling this statutory obligation. See Thrower v. United States, 528 F. App'x 108, 111 (3d Cir. 2013). The Government also acknowledges the BOP's obligation to "provide suitable quarters and provide for the safekeeping, care, and subsistence" and "provide for the protection, instruction, and discipline" of those in its charge, including Drake. See 18 U.S.C. § 4042(a)(2), (3). Defendants correctly note that all such decisions involve an element of discretion. See Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. 2008) (While 18 U.S.C. § 4042(a)(2) and (3) requires BOP to protect and keep safe inmates in its care, "this statute leaves the implementation of these duties to the discretion of BOP officials"); see also Rinaldi v. United States, 460 F. App'x 80, 81 (3d Cir. 2012) ("[T]here is no federal statute, regulation or policy which requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates.").

Id., at *4.

While this ruling addressed Drake's primary legal claims, the court noted that Drake also asserted a claim that prison officials were negligent in that they violated mandatory standards of care set forth in the BOP Program Statement 3420.11, since this claim had not been squarely addressed in the defendant's initial motion to dismiss. The defendant has now renewed this motion to dismiss, (Doc. 48), focusing upon this program statement and arguing that the FTCA's discretionary function exemption also applies to inmate safety concerns grounded upon Program Statement 3420.11 which calls upon prison officials to exercise wide ranging direction in the performance of their duty to protect inmates from harm.

This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we submit that the FTCA's discretionary function exemption also applies in this setting and precludes any FTCA liability. Accordingly, we recommend that the motion to dismiss be granted.

## III. Discussion

### A. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject matter jurisdiction." A motion to dismiss under Rule 12(b)(1) thus challenges the power of the court to hear a case or consider a claim. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When faced with a

12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

Motions under Rule 12(b)(1) come in two varieties. First, a "facial" attack "contests the sufficiency of the pleadings." Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 187-88 (3d Cir. 2006)). Such a facial challenge "attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court 'to consider the allegations of the complaint as true.'" Hartig Drug Company, Inc. v. Senju Pharmaceutical Co., Ltd., 836 F.3d 261, 268 (3d Cir. 2016). Thus, in ruling on such a motion, the court assumes the truth of the allegations in the complaint but must analyze the pleadings to determine whether they state an action that comes within the court's jurisdiction. United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). A facial 12(b)(1) motion should be granted only if it appears certain that the assertion of subject-matter jurisdiction is improper. Kehr Packages, 926 F.2d at 1408-09; Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa., 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003).

In contrast, a "factual" attack on subject-matter jurisdiction asserts that although the pleadings facially satisfy jurisdictional requirements, one or more allegations in the complaint is untrue, which therefore causes the action to fall outside the court's jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In ruling on factual challenges, a court must consider the merits of the disputed allegations, since "the trial court's . . . very power to hear the case" is in dispute. Id. at 891.

This case arises in a specific factual context, a Rule 12(b)(1) motion challenging subject matter jurisdiction based upon the FTCA's discretionary function exemption. In this setting:

> Where, as in this case, the Government asserts that Plaintiff's claim falls within the discretionary function exception to the FTCA, the court treats the motion as a factual attack to the court's subject matter jurisdiction. See S.R.P. ex rel Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012). As such, the court may weigh any evidence in the record to satisfy itself whether it has subject matter jurisdiction and there is no presumed presumptive truthfulness of Plaintiff's allegations. Mortensen, 549 F.2d at 891. Additionally, "[a]lthough a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity ... the Government has the burden of proving the applicability of the discretionary function exception." See S.R.P. ex rel. Abunabba, 676 F.3d at 333.

Drake v. United States, No. 1:20-CV-0972, 2021 WL 4502240, at *2 (M.D. Pa. Sept. 30, 2021).

## B. Rule 12(b)(6) Standard

The defendants have also asserted dismissal of this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted." With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S. Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v.</u>

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has

underscored that a trial court must assess whether a complaint states facts upon

which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal,

556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to

dismiss, a court should "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." Id. at 679.

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather,

in conducting a review of the adequacy of complaint, the Supreme Court has advised

trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Two years after Fowler, the Third Circuit further observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. (1955)). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'"

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Id.</u>

<u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## C. **The FTCA's Discretionary Function Exemption.**

Drake's sole remaining claim against the United States is brought under the Federal Tort Claims Act, FTCA, 28 U.S.C. § 2401, *et seq.* and 28 U.S.C. § 2675, *et seq.* "The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674." Moshier v. United States, No. 05–180, 2007 WL 1703536, * 9 (W.D.Pa. June 11, 2007); see also Baker v. United States, No. 05–146, 2006 WL 1946877, * 4 (W.D.Pa. July 11, 2006). The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. § 2675(a). See Rosario v. Bureau of Prisons, No. 06–873, 2007 WL 951468, * 4 (M.D.Pa. March 27, 2007).

The liability of the United States under the FTCA is, however, subject to a number of exceptions that are set forth in 28 U.S.C. § 2680, including the

"discretionary function" exception that is invoked in this action. That exception

provides that the United States is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

In assessing whether specific conduct falls within the discretionary function

exemption:

> The United States Supreme Court has developed a two-part test for determining whether agency conduct qualifies as a discretionary function or duty. Berkovitz v. United States, 486 U.S. 531, 536 (1988). First, the court must consider the nature of the employee's conduct at issue and determine whether it involves "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (citing Berkovitz, 486 U.S. at 536); see also Merando, 517 F.3d at 164–65. The conduct is not discretionary if the employee's actions are "controlled by mandatory statutes or regulations." Gaubert, 499 U.S. at 329 (internal citation omitted). Where an employee "violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." Id., 499 U.S. at 325. Conversely, if a statute, regulation, or policy leaves it to the federal employee or agency to determine when and how to act, the employee or agency is not bound to act in a particular manner and the exercise of its authority is discretionary. Id. 499 U.S. at 329. If the first prong of the test is satisfied, the court must then consider "whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.' " Baer, 772 F.3d at 172 (quoting Berkovitz, 486 U.S. at 536). In making this determination, a court must keep in mind "the purpose of the exception is to prevent judicial 'second-guessing' of legislative

and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort ... when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." Gaubert, 499 U.S. at 323 (internal quotation marks and citation omitted).

Drake, 2021 WL 4502240, at *4.

Therefore, this exception covers only those acts that are discretionary in nature, meaning acts that involve an element of judgment or choice, and it is the nature of the conduct itself, not the status of the actor, that determines whether the exception applies. United States. v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). This requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive." Berkovitz v. United States, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); see also Koch v. United States, 814 F.Supp. 1221, 1227 (M.D.Pa.1993) (McClure, J.) ("Conduct is not discretionary unless it involves an element of judgment or choice.").

Moreover, even "assuming the challenged conduct involves an element of judgment," it must still be determined whether that judgment is of the kind that the discretionary function exception was designed to shield. Gaubert, 499 U.S. at 322. Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and

political policy through the medium of an action in tort," id. at 323 (citation omitted), the exception "protects only governmental actions and decisions based on considerations of public policy." Id. (quoting Berkovitz, 486 U.S. at 537); see also Mitchell v. United States, 225 F.3d 361, 363 (3d Cir.2000) (in determining whether the discretionary function exception is applicable, courts must first determine whether the challenged conduct involves an "element of judgment or choice" and, if so, courts consider "whether that judgment is the kind that the discretionary function exception was designed to shield.").

"Before we can make the two-part . . . inquiry to determine whether the discretionary function exception immunizes the Government from a suit based on its conduct, we must identify the conduct at issue." Merando v. United States, 517 F.3d 160, 165 (3d Cir.2008). This inquiry, in turn, requires us to "decide whether a statute, regulation, or policy" required the BOP to protect Drake "in any specific manner, or whether the Government's actions were discretionary because they involved an element of judgment or choice." Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. June 2, 2008) (quoting Merando, 517 F.3d at 168).

These legal benchmarks guide us in addressing this motion to dismiss.

**D. The Discretionary Function Exemption Applies to Drake's Negligence Claims Grounded Upon Program Statement 3420.11.**

At bottom, Drake's FTCA negligence claim rests upon the proposition that prison officials had a non-discretionary duty under Program Statement 3420.11 to

15

protect the plaintiff from potential harm at the hands of other prisoners which they

negligently breached in this case. The government's response to this claim is that,

while this program statement creates a general responsibility to protect inmates from

harm, it is also evident that prison officials may exercise wide ranging discretion in

the performance of this duty, discretion that is sufficiently sweeping that it falls

within the FTCA's discretionary function exemption.

Upon consideration, we agree that FTCA claims grounded upon Program

Statement 3420.11 fall within the FTCA's discretionary function exemption and

therefore may not be pursued under the FTCA. We note that we are not alone in

reaching this conclusion. Quite the contrary, a rising tide of case law agrees that the

degree of discretion that is inherent in inmate safety decisions brings such policy

choice squarely within the FTCA exemption. As one court has observed on this

score:

> Program Statement 3420.11 leaves "ample room for judgment" of
> prison staff in making decisions. See Cohen, 151 F.3d at 1343. To find
> otherwise would subject USA to litigation for virtually *all* orders made
> by prison officials any time a prisoner was inadvertently harmed within
> BOP care. See id. at 1344 ("Under [Plaintiff's] theory, anytime a
> prisoner is injured by another prisoner, he can bring an action claiming
> that the BOP was negligent in classifying the prisoner who committed
> the assault and placing him in the institution at which the attack
> occurred, or in not removing that prisoner based upon some prior
> incident, or in not restricting his movement, or in not providing more
> guards, and so forth."). Such second-guessing would seriously
> handicap efficient government operations, which is precisely what the
> discretionary function exception was implemented to avoid. See Varig
> Airlines, 467 U.S. at 814.

16

Bruno v. United States, No. 3:18CV1390-MCR-HTC, 2019 WL 7285281, at *5

(N.D. Fla. Dec. 5, 2019), report and recommendation adopted, No. 3:18CV1390-

TKW-HTC, 2019 WL 7284761 (N.D. Fla. Dec. 27, 2019). See also Shorter v. United

States, No. CV1916627RMBKMW, 2020 WL 4188455, at *9 (D.N.J. July 21, 2020)

(dismissing FTCA claim grounded on Program Statement 3420.11). Simply put, "the

decision of how to protect an inmate from an assault by another inmate is the type

of decision the discretionary function exception is designed to shield." Carpenter v.

Bragg, No. 815CV00574GRAJDA, 2015 WL 13734632, at *11 (D.S.C. Nov. 30,

2015), report and recommendation adopted, No. 8:15-CV-574-RMG, 2016 WL

845315 (D.S.C. Mar. 1, 2016).

Therefore, the first element of the discretionary function test—whether the

federal employee's action entail and element of discretion—is plainly met here when

we consider how Program Statement 3420.11 is to be implemented. Likewise, it

seems that that judgments regarding the most prudent ways under Program

Statement 3420.11 of avoiding inmate-on-inmate violence are also clearly of the

kind that the discretionary function exception was designed to shield. Gaubert, 499

U.S. at 322.  Therefore, the second element of the discretionary function test is also

satisfied here.

These decisions applying the discretionary function exemption to FTCA

claims brought under Program Statement 3420.11 relating to inmate safety

decisions, in turn, are entirely consistent with a growing body of case law previously recognized by the district court which applies the discretionary function exemption to this program statement's statutory analogue, 18 U.S.C. §4042. Case law construing FTCA claims premised upon this statute, which imposes a general duty on staff to ensure inmate safety, have long recognized that that all institutional inmate safety decisions involve an element of discretion. See Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. 2008) (While 18 U.S.C. § 4042(a)(2) and (3) requires BOP to protect and keep safe inmates in its care, "this statute leaves the implementation of these duties to the discretion of BOP officials"); see also Rinaldi v. United States, 460 F. App'x 80, 81 (3d Cir. 2012) ("[T]here is no federal statute, regulation or policy which requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates."). This substantial element of discretion takes such decisions and policies outside the ambit of the FTCA, which only applies to the negligent execution of non-discretionary duties.

Applying the discretionary function exemption in this setting is also wholly consistent with settled Supreme Court precedent, which in the Eighth Amendment setting has long acknowledged that:

> When the "ever-present potential for violent confrontation and conflagration," Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into *actual* unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," Rhodes v. Chapman, supra, 452 U.S., at 349, n.

18

> 14, 101 S.Ct., at 2400, n. 14, carries special weight. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S., at 547, 99 S.Ct., at 1878. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline.

Whitley v. Albers, 475 U.S. 312, 321–22, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986) (emphasis in original).

Accordingly,  we find that the performance of this general duty to ensure the safety and well-being of prisoners always carries with it a substantial element of discretion, regardless of whether that duty is cast as one arising out of the constitution, federal statutes, or Bureau of Prisons policies. Recognizing the historically broad discretion conferred upon correctional staff in this field, we conclude that the discretionary function exemption applies to Drake's claims that are premised upon Program Statement 3420.11 and recommend that this claim be dismissed.

## IV.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendant's motion to dismiss (Doc. 48) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,

recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of April 2022.

                                        *S/ Martin C. Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge